UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RONDELL MILEY,                          :
   PLAINTIFF,                         :
                                      : CIVIL ACTION NO. 3:12cv519(VLB)
                                        :
   v.                                  : FEBRUARY 25, 2013
                                        :
HOUSING AUTHORITY OF THE CITY OF,       :
BRIDGEPORT AND NICHOLAS CALACE          :
DEFENDANTS.                             :

**MEMORANDUM OF DECISION GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION TO REMAND AND GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION TO DISMISS [Dkt. ##13, 17, 21]**

     Before the Court is the Plaintiff's, Rondell Miley ("Miley"), motion to

remand this action to Connecticut Superior Court, asserting that his claim under

the Connecticut Workers' Compensation Act is non-removable.  Also before the

Court is the motions to dismiss the Plaintiff's amended complaint, filed pursuant

to Fed. R. Civ. P. 12(b)(6) for failure to state a claim, by the Defendants, the

Housing Authority of the City of Bridgeport (the "Housing Authority") and its

Executive Director, Nicholas Calace ("Calace").  The amended complaint

advances a state statutory claim for retaliation under the Connecticut Workers'

Compensation Act, Conn. Gen. Stat. §31-290(a) and three federal law claims, two

under 42 U.S.C. §1983 claims for violation of procedural due process by virtue of

the manner in which his employment was terminated by and one stigma-plus due

process claim.  For the reasons articulated below, the Court GRANTS IN PART

AND DENIES IN PART Plaintiff's motion to remand and GRANTS IN PART AND

DENIES IN PART Defendants' motions to dismiss.  The Court severs the Plaintiff's

Workers' Compensation Act claim and remands that claim back to Connecticut Superior Court.

<u>Factual Allegations</u>

The Plaintiff's amended complaint alleges the following facts.  In October 2006, Miley commenced employment with the Housing Authority as a maintenance aide.  [Dkt. #20, Amended Complaint, ¶1].  Miley alleges that on September 20, 2011, he was injured in the course of his employment.  *Id.* at ¶3.  Miley sought workers' compensation benefits.  *Id.* at ¶4.  Miley alleges that the Defendants discriminated against him for exercising his rights under the Workers' Compensation Act when they discharged him on March 5, 2012.  *Id.* at ¶5.

Miley alleges that the Housing Authority and Nicholas Calace conducted an investigation into his compensation claim on February 23, 2012.  *Id.* at Count II,¶4.  Miley contends that Defendants accused him of having falsified Housing Authority records, defrauding the workers' compensation benefit program and violating the public trust.  *Id.* at Count II,¶5.   Miley alleges that Defendants' accusations interfered with his employment reputation "in such a manner to interfere with his continued ability to seek and obtain employment." *Id.* at Count II,¶6.   Miley further alleges that the "Defendants' accusations against the Plaintiff resulted in his wrongful discharge of employment" and "impinged his good name, reputation, honor and integrity and denigrated the Plaintiff's competence in his employment field." *Id.* at Count II,¶7.  Miley asserts that Defendants knew

that his "treating physician indicated that the Plaintiff sustained a work related injury" and nonetheless "accused him of fraud, dishonesty and violation of public trust." *Id.* at Count II,¶7.

Miley further alleges that the "accusation of intentional misconduct published by the Defendants concerning the Plaintiff's occupation resulted in his wrongful discharge of his employment, stigmatized and effected the competency of the Plaintiff, and will preclude him from obtaining other job opportunities in his employment field." *Id.* at Count II,¶8.  Miley further alleges that the Defendants' action in "accusing the Plaintiff of fraud…was irrational and wholly arbitrary without any proper basis" and ignored or failed to consider that Miley was treated for a work related injury by his physician who confirmed it was work related. *Id.* at Count II,¶10.

Miley also alleges that he was denied a full and fair pre-termination hearing in violation of due process.  *Id.* at Count III,¶9.  In particular, Miley contends that the Defendants failed to provide him with all the evidence they allegedly had pertaining to the basis of his termination and as a result he did not have an adequate opportunity to respond to the charges against him. *Id.*  Miley claims that the "Defendants during the course of their investigation against [him] concerning his claim for workers' compensation benefits…obtained and/or were aware of statements from co-workers of the Plaintiff and had in their possession an investigation conducted by the Defendants' workers compensation administrator Chartis, but failed to provide such evidence to the Plaintiff, thereby precluding

the Plaintiff from having a reasonable opportunity to respond."  *Id.* at Count III,¶10.

A.  **Motion to Remand**

Miley argues that the entire action must be remanded because 28 U.S.C. §1445(c) provides that "[a] civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States."  28 U.S.C. §1445(c).  Defendants argue that remand is not appropriate under 28 U.S.C. §1445(c) because Miley has also asserted federal claims over which this Court has original federal question jurisdiction. Defendants point out that "Connecticut [federal] courts routinely exercise jurisdiction over Connecticut workers' compensation claims when such claims are brought with federal claims over which the court has original question jurisdiction." In support of this proposition the defense cites to six District of Connecticut cases in support.  [Dkt. #14, Def. Mem., p. 14-15].

Defendants' arguments are unavailing.  All of the cases cited by the Defendant are distinguishable as all involve cases which were filed by the plaintiffs in and were not removed to federal court.  This distinction is critical as it implicates the subtle distinction between removal jurisdiction and supplemental jurisdiction as well as the fact that Section 1445(c) operates as a "choice of forum privilege" for plaintiffs and  not for  defendants.  See *Wilson v. Lowe's Home Center, Inc.*, 401 F.Supp.2d 186, 193-94 (D. Conn. 2005).   To elaborate, federal courts can consider workers' compensation claims pursuant to their authority to

exercise supplemental jurisdiction where a plaintiff files his complaint directly in federal court.  As noted above, this is illustrated by the six cases Defendants cite in their memorandum in opposition to the Plaintiff's motion to remand, as the plaintiffs in all six cases cited had filed suit directly in federal court.  Thus the court's removal jurisdiction was never implicated.  *See Santiago v. Butler Co.*, 3:08-cv-1297*; Hubbard v. Total Communications*, 3:05-cv-1514; *Hill v. Pfizer*, 3:01-cv-1546; *Lajeunesse v. Great Atlantic & Pacific Tea Co.*, 3:99-cv-1630; *Dupee v. Klaff's, Inc.*, 3:05-cv-344; *Venterina v. Cummings & Lockwood*, 3:98-cv-849.  Section 1445(c) pertains only to removing workers' compensation claims from state to federal court and thus it is not triggered where a plaintiff files suit directly in federal court.  Had Miley chosen to file his complaint directly in federal court, this Court could have considered his workers' compensation claim pursuant to this Court's authority to exercise supplemental jurisdiction.  However because Miley choose to file in state court, §1445(c)'s bar on removal of workers' compensation claims has been triggered.

The parties do not appear to dispute that Miley's retaliatory discharge claim under Conn. Gen. Stat. §31-290(a) arises under the workers' compensation laws of Connecticut for purposes of §1445(c).  In a matter of first impression, another court in this district persuasively held that such a claim does arise under such laws.  *Wilson*, 401 F.Supp.2d at 190-91.  The *Wilson* court explained that "the application of § 1445(c) to Connecticut state law is a question of federal law" and noted that courts have interpreted the phrase "arising under" in § 1445(c) as having "the same meaning as the identical phrase in the closely related federal

question statute, 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." *Id.* at 190 (internal quotation marks and citations omitted).   The *Wilson* court observed that "[a]pplying this test, courts have reached differing conclusions on the issue of removability, depending primarily on whether the plaintiff's cause of action for retaliatory discharge was created by statute or case law." *Id.* (collecting cases).   Based on these cases, the *Wilson* court reasoned that a retaliatory discharge claim under §31-290(a) arises under Connecticut workers' compensation laws for purposes of § 1445(c) because such a claim is "explicitly created by §31-290(a)" and an integral part of Connecticut's scheme for compensating employees for work-related injuries. *Id.* at 191.   This Court agrees with the *Wilson* court's analysis that a retaliatory discharge claim under §31-290(a) arises under the workers' compensation laws of Connecticut for purposes of §1445(c).

The Defendants contend that the prohibition on removal in §1445(c) applies only to cases which were removed on the basis of diversity jurisdiction and should not extend to cases which were removed on the basis of federal question jurisdiction.   The *Wilson* court only addressed whether §1445(c) permitted removal of an entire action where there was diversity of citizenship and did not consider whether it also prevented removal of an action where a workers' compensation claim was joined with related federal claims.   In addressing the question with respect to diversity jurisdiction, the Wilson court examined 28 U.S.C. §1441(a), which "confers a general right to remove 'any civil action' within

the 'original jurisdiction' of the district courts unless Congress has 'otherwise expressly provided.'" *Id.* at 192.  In particular, the court considered "[w]hether this provision confers a right to remove an action in which a nonremoveable claim is joined with otherwise removable diversity claims."  *Id.*  After an analysis of the meaning of the language of §1441(a) and the Second Circuit's opinion in an analogous context, *Gonsalves v. Amoco Shipping Co.*, 733 F.2d 1020 (2d Cir. 1984), the *Wilson* court held that removal of the entire action was not appropriate under §1441(a) in light of § 1445(c)'s prohibition.  *Id.* at 195-96.

In coming to this conclusion, the *Wilson* court explained that reading §1441(a) to permit removal "would undermine the policies motivating § 1445(c). The legislative history of § 1445(c) shows that Congress enacted the statute to serve two objectives. Congress's primary objective was to reduce the number of diversity cases in federal court by preventing removal of workers' compensation claims against nonresident employers. At the same time, Congress wanted to relieve workers of the expense and delay associated with litigation in federal court." *Id.* at 196 (citing S.Rep. No. 85-1830 (1958), *reprinted in* 1958 U.S.C.C.A.N. 3099, 3106; *Horton,* 367 U.S. at 351-52, 81 S.Ct. 1570 (noting congressional concern for federal court congestion and potential burdens on workers' compensation plaintiffs if forced to litigate in federal courts); 14C Wright et al., *supra,* § 3729, at 215 (explaining that Congress sought to "limit[ ] the flow of these essentially local disputes into the federal courts")).

The *Wilson* court acknowledged that it did not address the complicated question of "whether § 1445(c) prevents removal of an action when a workers'

7

compensation claim is joined with related federal law claims" but noted that courts faced with this scenario "have remanded the workers' compensation claim only, retaining jurisdiction over the federal claim." *Id.* at 197 n.13 (collecting cases). Those courts which have concluded that § 1445(c) prevents removal in an action where there are related federal claims cite many of the same reasons as the *Wilson* court in support of their conclusion. For example, the Fifth Circuit explained that it would "broadly interpret § 1445(c) in order to further Congressional intent toward maintaining state court jurisdiction over workers' compensation cases filed in state court." *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1118 (5th Cir. 1998). The Fifth Circuit explained that there was no reason to distinguish between removal based on diversity or federal question jurisdiction when construing § 1445(c). *Id.* Consequently, the Fifth Circuit in *Sherrod* adopted its prior reasoning regarding removal under § 1445(c) in *Jones v. Roadway Exp., Inc.*, 931 F.2d 1086 (5th. Cir. 1991) which involved removal based on diversity jurisdiction. *Id.* at 1118-1119. The Fifth Circuit noted that its analysis in *Jones* did not distinguish between diversity and federal question jurisdiction when construing § 1445(c) and instead focused on the language of § 1445(c) which broadly prohibits removal of a civil action in any State court arising under the workmen's compensation laws of such State. *Id.* The Fifth Circuit in *Sherrod* emphasized that "[a] plain reading of the statute lends credence to the proposition that § 1445(c) prohibits the removal of any state worker's compensation claims" regardless of whether jurisdiction is based on diversity or federal question. *Id.* at 1119. The Eighth Circuit likewise concluded that § 1445(c)

prohibits removal of state workers' compensation claims regardless of whether the district court's original jurisdiction is based on diversity or federal question. *Humphrey v. Sequentia, Inc.*, 58 F.3d 1238, 1245 (8th Cir. 1995); *see also Spearman v. Exxon Coal USA, Inc.,* 16 F.3d 722, 724 (7th Cir. 1994) (noting that "[e]ven a case containing a federal claim may not be removed if it also arises under state workers' compensation law" under §1445(c)).  This Court agrees that a plain reading of § 1445(c) supports the conclusion that it prohibits removal of a state workers' compensation claim regardless of whether there is original jurisdiction based on diversity or federal question jurisdiction.  To hold otherwise would undermine the policies motivating § 1445(c) to relieve workers of the expense and delay associated with litigation in federal court as well as the choice-of-forum privilege provided by Congress in § 1445(c).

      Having determined that § 1445(c) applies to prevent removal of Miley's retaliatory discharge claim under Conn. Gen. Stat. §31-290(a) despite the fact that Miley has also brought related federal claims, the Court must next determine whether it should remand the entire action or just Miley's workers' compensation claim.  This question appears to have been resolved by Congress's most recent revision to the removal statutes, which mandates that the Court must sever and remand only the non-removable workers' compensation claim.  On December 7, 2011, Congress passed the Federal Court's Jurisdiction and Venue Clarification Act of 2011, Pub.L. No. 112–63, §§ 103(b) 104, 125 Stat. 758, 760, 762 (Dec. 7, 2011).  The Statute took effect on January 7, 2012, and amended, in part, several

of the removal statutes, including of relevance 28 U.S.C. §1441(c).[1]   Under the

prior version of §1441 (c), "[w]henever a separate and independent claim or cause

of action within the jurisdiction conferred by section 1331 of this title is joined

with one or more otherwise non-removable claims or causes of action, the entire

case may be removed and the district court may determine all issues therein, or,

in its discretion, may remand all matters in which State law predominates." 28

U.S.C. §1441(c) (2011 version).   The amended version now provides:

> (c) Joinder of Federal law claims and State law claims.--(1) If a civil action
> includes--
>
> > (A) a claim arising under the Constitution, laws, or treaties of the
> > United States (within the meaning of section 1331 of this title), and
> >
> > (B) a claim not within the original or supplemental jurisdiction of the
> > district court or a claim that has been made nonremovable by
> > statute, the entire action may be removed if the action would be
> > removable without the inclusion of the claim described in
> > subparagraph (B).
>
> (2) *Upon removal of an action described in paragraph (1), the district court
> shall sever from the action all claims described in paragraph (1)(B) and
> shall remand the severed claims to the State court from which the action
> was removed.* Only defendants against whom a claim described in
> paragraph (1)(A) has been asserted are required to join in or consent to the
> removal under paragraph (1).

28 U.S.C. §1441(c) (emphasis added).

In light of these revisions, §1445(c)'s prohibition on removal and §1441(c)

now work in concert based on the inclusion of the language regarding claims

made nonremovable by statute in subparagraph (1)(B).  A workers' compensation

claim plainly falls within the scope of subparagraph(1)(B) as it is a claim that has

---

[1] As this instant case was filed on March 8, 2012 in state court and removed
April 5, 2012 to federal court, the amended statute applies to the present action.

been made nonremovable by §1445(c).  Therefore the revised §1441(c) expressly contemplates the exact scenario facing the Court in which a civil action contains both federal claims and non-removable claims.  The revised statute unambiguously directs the Court in such a scenario to sever from the action the non-removable claim and remand that claim back to state court.[2]  *See e.g., Bivins v. Glanz*, no.12-cv-103, 2012 WL 3136115, at *2 (N.D. Okla. Aug. 1, 2012) (acknowledging that under the amended version of §1441(c), "the Court has no discretion to remand federal claims that are joined with a statutorily nonremovable claim, such as a workers' compensation retaliation claim. Instead, the Court must sever and remand the nonremovable claim and retain all other removed claims that are within th Court's original or supplemental jurisdiction."); *Beylea v. Florida, Dept. of Revenue*, 859 F.Supp.2d 1272, 1276 (N.D.Fla. 2012) (noting that "party trying to sustain federal jurisdiction over the worker's-compensation claim in this case will face substantial headwinds" in view of the

---

[2] Even prior to the most recent amendments to §1441(c), many courts had concluded that the appropriate course of action in such a scenario was to remand the workers' compensation claim and retain jurisdiction over the related federal claims.  *See e.g., Sherrod*, 132 F.3d at 1119 (holding that the district court erred by failing to sever and remand the state workers' compensation clam); *Reed v. Heil Company,* 206 F.3d 1055, 1061 (11th Cir.2000) (holding that a federal court adjudicating both an ADA claim and a worker's compensation retaliation claim should only remand the worker's compensation retaliation claim pursuant to §1445(c)); *Lamar v. Home Depot*, no.12-0552-WS-C, 2012 WL 6026272, at *3 (S.D. Ala. Dec. 3, 2012) ("Some courts have determined that the retention of a federal claim despite remand of the worker's compensation claim under Section 1445(c) can be justified under Section 1441(c), and the Court agrees"); cf *Adams v. Unarco Indus.*, No.civ-11-420-FHS, 2012 WL 381716, at *2 (E.D. Okla. Feb. 6,2012) ("Considering the absence of controlling authority and all relevant policy considerations, the court concludes the remand of the entire case, including the federal claims is proper.").

fact that "Congress now has said that, going forward, a district court 'shall' remand a claim in precisely these circumstances.").  Because Miley's workers' compensation claim has been made nonremovable by statute, the Court must sever it and remand it back to state court pursuant to §1441(c)'s clear directive.

Although the amended version of §1441(c) could result in judicial inefficiency by mandating two lawsuits as opposed to one, it does protect the choice-of-forum privilege for plaintiffs under §1445(c) and furthers the Congressional intent toward maintaining state court jurisdiction over workers' compensation cases.  As the *Belyea* court acknowledged this potential for judicial inefficiency could be remedied by the parties who could "[i]n any event, if both sides truly wish to litigate in a single forum and can agree on whether to do it in state or federal court, they apparently can bring about the desired result, either by having the plaintiff file a new case in federal court asserting all the claims, or by having the plaintiff file a new case in state court that the defendant does not remove. In short, they can start over." 859 F.Supp.2d at 1276. Consequently, the Court is required by §1441(c) and §1445(c) to sever and remand Miley's retaliatory discharge claim under Conn. Gen. Stat. §31-290(a). The Court will therefore maintain jurisdiction over Miley's federal Section 1983 claims and proceed to consider the Defendants' pending motion to dismiss on those claims.

**B. Motion to Dismiss**

<u>**Legal Standard**</u>

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Sarmiento v. U.S.*, 678 F.3d 147 (2d Cir. 2012)(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitations of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations and internal quotations omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).  "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 129

S.Ct. at 1949-50).  "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'"  *Id.* (quoting *Iqbal*, 556 U.S. 679).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

<u>Analysis</u>

i.      **Procedural Due Process Claim**

Miley's procedural due process claim is predicated on Defendants' failure to provide him with the statements of his co-workers and the worker's compensation investigation report at his pre-termination hearing which Miley alleges deprived him of the opportunity to reasonably respond to such evidence. Defendants argue that under Second Circuit precedent an employer is only required to provide an explanation of the evidence that forms the basis for the employee's termination and is not required to turn over a copy of such evidence. The Second Circuit in *Otero v. Bridgeport Housing Authority*, 297 F.3d 142 (2d Cir. 2002) held that the "pretermination process need not be elaborate or approach the level of a full adversarial evidentiary hearing, but due process does require that before being terminated such an employee [be given] oral or written notice of the charges against h[er], *an explanation of the employer's evidence,* and an opportunity to present h[er] side of the story."  *Id.* at 151 (internal quotation marks and citations ommited).   In *Otero,* an employee was terminated after being

14

accused of stealing a toilet without being fully informed about the nature of the evidence against her including statements of her co-workers accusing her of the theft.   The Second Circuit explained that it was insufficient to merely provide some semblance of the evidence against the plaintiff as that "does not necessarily afford the accused an adequate opportunity to present her side of the story. *Id.*

At the motion to dismiss stage, the Court is required to accept all factual claims in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010).  Here, Miley has alleged that he was not provided with all of the evidence against him and therefore did not have the opportunity to respond to such evidence and present his side of the story.  The Court is required to accept this allegation as true and draws the reasonable inference that Plaintiff was also not provided with an explanation of such evidence and not just a copy of the evidence as Defendants suggest.  To the extent that Defendants imply that Miley was provided with a sufficient explanation of the evidence, but not a copy of such evidence, the sufficiency of the explanation is an evidentiary issue, which should be addressed in a motion for summary judgment.  At this, the motion to dismiss stage, the court must accept Miley's assertion that the summary was insufficient to afford him an opportunity to defend himself  as true.   The parties will have the opportunity to raise the issue of whether Miley was provided with a sufficient explanation of the evidence against him to satisfy due process on summary judgment.  As "[i]t is well-established that the existence of post-deprivation

procedures inform the necessary scope of the pre-deprivation procedures"
*Plofsky v. Giuliano*, No.06-cv-789(JCH), 2009 WL 902360, at *15 (D. Conn. Mar. 31,
2009) *rev'd on other grounds* by 375 F. App'x 151 (2d Cir. 2010), the question of
whether Miley was afforded procedural due process is a fact intensive inquiry
best reserved for summary judgment or trial.  *See Adams v. Suozzi*, 517 F.3d 124,
128 (2d Cir. 2008) ("[T]here is no due process violation where ... pre-deprivation
notice is provided and the deprivation at issue can be fully remedied through the
grievance procedures provided for in a collective bargaining agreement.");
*Saltarella v. Town of Enfield,* 427 F.Supp.2d 62, 74 (D.Conn.2006) (concluding that
requirement that employee be given an explanation of the evidence against him
was met when employee was given thirty minutes, at his hearing, to review such
evidence), *aff'd,* 227 F. App'x. 67 (2d Cir. 2007).  Miley has pled sufficient factual
content to allow the Court to draw the reasonable inference that the Defendants
are liable for violating Miley's procedural due process rights when they did not
provide him with statements of his co-workers and its investigative report.  The
Court therefore denies Defendants' motion to dismiss Miley's procedural due
process claim.

      ii.    **Stigma-Plus Claim**

      Plaintiff argues that he has plausibly pled a stigma-plus due process claim
on the basis of the Defendants' accusations that he falsified Housing Authority
records and defrauded the workers' compensation benefit program.  Defendants
argue that Miley does not allege any specific facts as to what statements were
made and how they impacted his reputation and restricted his employment.  It is

well established that a "person's interest in his or her good reputation alone,
apart from a more tangible interest, is not a liberty or property interest sufficient
to invoke the procedural protections of the Due Process Clause or create a cause
of action under § 1983." *Patterson v. City of Utica,* 370 F.3d 322, 329–30 (2d
Cir.2004) citing *Paul v. Davis,* 442 U.S. 693, 701 (1976*).*  However, "Loss of one's
reputation can, however, invoke the protections of the Due Process Clause if that
loss is coupled with the deprivation of a more tangible interest such as
government employment."  *Id.* at 330.

 "'In an action based on a termination from government employment, a
plaintiff must satisfy three elements in order to demonstrate a deprivation of the
stigma component of a stigma-plus claim.'"  *Holmes v. Town of East Lyme*, 866
F.Supp.2d 108, 125 (D. Conn. 2012) (quoting *Segal v. City of New York,* 459 F.3d
207, 212 (2d Cir.2006)).   "First, the plaintiff must ... show that the government
made stigmatizing statements about [him]—statements that call into question
[the] plaintiff's good name, reputation, honor, or integrity.  We have also said that
statements that denigrate the employee's competence as a professional and
impugn the employee's professional reputation in such a fashion as to effectively
put a significant roadblock in that employee's continued ability to practice his or
her profession will satisfy the stigma requirement.  Second, a plaintiff must prove
these stigmatizing statements were made public. Third, the plaintiff must show
that the stigmatizing statements were made concurrently with, or in close
temporal relationship to, the plaintiff's dismissal from government employment."
*Id.* (internal quotation marks and citations omitted).  "A plaintiff generally is

required only to raise the falsity of these stigmatizing statements as an issue, not prove they are false."  *Patterson*, 370 F.3d at 330.

The Court agrees with Defendants that Miley's allegations are devoid of specific factual content to state a claim to relief for a stigma-plus violation that is plausible on its face.  Miley conclusory alleges without supporting facts that the Defendants made stigmatizing comments regarding his alleged falsification of workers' compensation benefits that negatively impacted his career prospects.  First, Miley has not alleged that any of Defendants' alleged comments were made public.  In his opposition memorandum, Miley argues that the publication requirement may be "satisfied where the stigmatizing charges are placed in the discharged employee's personnel file and are likely to be disclosed to prospective employers."  *Guerra v. Jones*, 421 F. App'x 15, 18 (2d Cir. 2011) (internal quotation marks and citations omitted).  However nowhere in the amended complaint does Miley allege that the stigmatizing statements were placed in his personnel file that will likely be disclosed to prospective employers.  It is well established that "[p]laintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to Defendants' motion to dismiss."  *K.D. ex rel. Duncan v. White Plains School Dist.*, No.11CIV.6756(ER), 2013 WL 440556, at *14 n.8 (S.D.N.Y. Feb. 5, 2013)( citing *Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals,* 812 F.Supp.2d 357, 363 n. 9 (S.D.N.Y.2011); *Scott v. City of New York Dep't of Corr.,* 641 F.Supp.2d 211, 229 (S.D.N.Y.2009), *aff'd,* 445 F. App'x 389 (2d Cir.2011)).

Even if the Court did permit Miley to amend his complaint to allege that stigmatizing comments were placed in his personnel file, his stigma-plus claim would still fail as Miley has not plead facts sufficient to support the conclusion that Defendants' allegedly stigmatizing comments impugned his reputation in such a fashion as to effectively put a significant roadblock in his continued ability to practice his profession.  Courts have routinely held that "merely conclusory allegations that Plaintiff was stigmatized, that her reputation was substantially damaged and that she lost professional standing are insufficient without factual support to allege a plausible stigma-plus claim."  *Piccoli v. Yonkers Bd. Of Educ.*, No.08-cv-8344(CS), 2009 WL 4794130, at *4 (S.D.N.Y. Dec. 11, 2009); se*e also Srinivas v. Picard*, 648 F.Supp.2d 277, 290 (D.Conn. 2009) (concluding that plaintiff had not  " plead facts sufficient to support a conclusion that her reputation was damaged to the extent that it has placed a significant roadblock in [her] ... continued ability to practice ... her profession. The plaintiff has alleged in conclusory terms that her reputation has been damaged, and that the defendants' actions led to the destruction of her career. Nowhere does she allege facts that could show she has been prevented from pursuing her career because of stigmatizing statements made by any of the defendants.") (internal quotation marks and citations omitted); TA*DCO Const. Corp. v. Dormitory Authority of State of New York*, 700 F.Supp.2d 253, 266-67 (E.D.N.Y. 2010) (dismissing stigma-plus claim because plaintiff conclusorily stated that it had sustained a tangible burden on its future employment prospect but included no facts to render plausible this element of the stigma-plus claim).   The allegations of the amended complaint

that Defendants' alleged comments had interfered with Miley's ability to seek and obtain employment are merely a formulaic recitation of the elements of a stigma-plus claim and nothing more than a naked assertion devoid of further factual enhancement necessary to render the claim plausible.  The Court therefore grants the Defendants' motion to dismiss Miley's stigma-plus due process claim.

  iii. *Monell* Claim

 In *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978), the Supreme Court held that municipalities cannot be held liable for constitutional torts under 42 U.S.C. §1983 on a *respondeat superior* theory but could be liable where execution of a municipality's policy or custom inflicts the injury.   As this Court has dismissed Miley's stigma-plus claim, the sole remaining Section 1983 claim is Miley's claim that he was denied due process when he was not provided with certain evidence at his pre-termination hearing.   As Defendants point out, the complaint is entirely devoid of any allegations that the Housing Authority had a custom, policy, or practice of withholding evidence or the explanation of evidence at pre-termination hearings.   In his opposition memorandum, Plaintiff argues that his *Monell* claim survives under a final policy maker theory.   Miley contends that his claim is plausible as he has alleged that the Executive Director of the Housing Authority, Nicholas Calace, was involved in the alleged due process violation.  When a plaintiff does not claim "that the actions complained of were taken pursuant to a local policy that was formally adopted or ratified, but rather that they were taken or caused by an official whose actions represent official policy, the court must determine whether the official had final

policymaking authority in the particular area involved." *Jeffes v. Barnes,* 208 F.3d 49, 57 (2d Cir.2000). "Whether an official in question possessed final policy making authority in a particular area is a legal question to be determined by reference to state law, local law, and custom and usage having the force of law." *Russo v. City of Hartford,* 341 F.Supp.2d 85, 108 (D.Conn. 2004). In other words, Miley must plead specific facts establishing that Calace had final policymaking authority over the provision of evidence prior to a termination hearing and that he either implemented or by act or omission acquiesced in the implementation of a policy or practice which resulted in the employee statements and investigation report being withheld from him.  However, Miley has not alleged in his amended complaint that Calace was a final policy maker in the particular area involved nor has he alleged that Calace participated in the decision to withhold evidence from him before the pretermination hearing.  As noted above, Miley may not assert new facts or theories for the first time in a memorandum in opposition to Defendants' motion to dismiss.  Even if the Court permitted Miley to amend his complaint to allege that Calace was a final policy maker, Miley has failed to identify in his opposition memorandum any state law, local law or custom and usage having the force of law that would establish that Calace either was the final policy maker for the Housing Authority or that he established or condoned a policy which caused the evidence to be withheld from Miley prior to pre-termination hearing. Consequently, the Court grants Defendants' motion to dismiss Miley's *Monell* claim against the Housing Authority and against Defendant Calace in his official capacity.

iv.     **Personal Involvement and Qualified Immunity**

Defendants also argue that the amended complaint is devoid of any plausible allegations that Calace was personally involved in the alleged due process violation.  Although couched as a qualified immunity defense, it is "well established in this Circuit that personal involvement of a defendant in the alleged constitutional deprivations is a prerequisite to an award of damages under §1983."  *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir 2010).  Consequently to state a claim under §1983, a plaintiff must allege personal involvement of a defendant. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).   This Court agrees that Miley has only conclusorily alleged that Calace was involved in the alleged due process violation.  Miley has not alleged any facts to support the conclusion that Calace was present at the pre-termination hearing or was personally involved in the decision to not disclose or provide an explanation of the co-worker statements and the investigation report to Miley.

To the extent that the amended complaint can be construed to assert that Calace is liable, in his individual capacity, on a theory of supervisory liability in that Calace failed to supervise and stop his subordinates from engaging in unconstitutional conduct, the complaint is devoid of any specific facts to support such an assertion.  Supervisory liability may be "'imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision or control of his subordinates."  *Odom v. Matteo*, 772 F. Supp. 2d 377, 403 (D. Conn. 2011) (internal quotation marks and citation omitted). Supervisory liability may be established by the following factors articulated by

the Second Circuit in *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (hereinafter the "Colon Factors"):

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.*[3]  In addition, the plaintiff must demonstrate an affirmative causal link between the supervisory official's failure to act and his injury. *Poe v. Leonard,* 282 F.3d 123, 140 (2d Cir.2002).  Miley has failed to allege any factual content to support an inference that Calace's conduct satisfies any of the *Colon* factors.  As this defect in pleading can be easily cured on amendment, the Court will grant Miley leave to amend his complaint to add the facts which support the conclusion that Calace was personally involved in the alleged due process violation either as a direct

---

[3] The recent Supreme Court decision in *Ashcroft v. Iqbal* has called into question whether all of the *Colon* factors remain a basis for establishing supervisory liability and that "no clear consensus has emerged among the district courts within this circuit." *Aguilar v. Immigration and Customs Enforcement Div. of the United States,* No.07CIV8224, 2011 WL 3273160, at *10 (S.D.N.Y. August 1, 2011) (collecting cases).  However, the Court need not assess *Iqbal*'s impact on the *Colon* factors at the motion to dismiss stage.

participant or as a supervisor or to name an individual who was personally involved and the facts surrounding that person's involvement.

The Court notes that if the complaint particularly alleged that that Calace was personally involved in the alleged constitutional violation, he would not be entitled to the protections of qualified immunity at the motion to dismiss stage. When reviewing a claim of qualified immunity, a court must consider "whether the facts that the plaintiff has alleged (See Fed. Rules Civ. Porc. 12 (b)(b)(6), (c)) or shown (see Rule 50, 56) make out a violation of a constitutional [or statutory] right," and "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

Although previously the Supreme Court prescribed a mandatory two-step analysis, considering first the constitutional violation prong and then the clearly established prong, the Court has since recognized that this rigid procedure "sometimes results in a substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case," as "[t]here are cases in which it is plain that a constitutional right is not established but far from obvious whether in fact there is a constitutional right." *Pearson*, 555 U.S. at 236-37. Thus, the Supreme Court has provided district courts with the discretion to decide the order in which the two prongs of the qualified immunity analysis are applied. *Id.* at 243.  In providing the lower courts with the discretion to determine the order of qualified immunity analysis to be applied to a given case, the Supreme Court explicitly acknowledged that "there will be cases in which a court will rather quickly and easily decide that there was no violation of clearly

24

established law before turning to the more difficult question of whether the relevant facts make out a constitutional question at all." *Id.* at 239.

Qualified immunity "protects government officials from liability where the officials' conduct was not in violation of a 'clearly established' constitutional right." *Sudler v. City of New York*, 11-1198-cv (L), 11-1216-cv (con), 2012 WL 3186373, at *10 (2d Cir. Aug. 7, 2012). "If the conduct did not violate a clearly established constitutional right, or if it was objectively reasonable for the [official] to believe that his conduct did not violate such a right, then the [official] is protected by qualified immunity." *Id.* (quoting *Doninger v. Niehoff*, 642 F.3d 334, 345 (2d Cir. 2011)). "Qualified immunity thus shields government officials from liability when they make 'reasonable mistakes' about the legality of their actions, and 'applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.* (internal citations omitted) (quoting *Pearson*, 555 U.S. at 231).

As the Court has dismissed Miley's stigma-plus claim, the Court will only consider whether qualified immunity applies with respect to Miley's remaining Section 1983 due process claim.  Defendants argue that Calace is entitled to qualified immunity because the amended complaint is devoid of any allegations that Calace violated some clearly established Constitutional right.  As discussed above, it was clearly established in 2012 that due process requires that before being terminated an employee be given notice of the charges against him, an explanation of the employer's evidence*,* and an opportunity to present his side of the story.  *Otero*, 297 F.3d at 151.  At the motion to dismiss stage, the Court's

analysis of qualified immunity is limited to the allegations in the complaint which plausibly state that Miley was not provided with an explanation of the evidence against him.  On the basis of those allegations, qualified immunity cannot be established at the motion to dismiss stage and the Court declines to find that qualified immunity protects Calace.

### Conclusion

Based upon the above reasoning, the Court GRANTS IN PART AND DENIES IN PART Plaintiff's [Dkt.#13] motion to remand.  The Court severs Plaintiff's workers' compensation claim from the action and remands that claim back to Connecticut superior court.  The Court also GRANTS IN PART AND DENIES IN PART Defendants' [Dkt.#13, 21] motions to dismiss.   The Plaintiff's stigma-plus and *Monell* claims have been dismissed.  The Court grants Plaintiff leave to amend his procedural due process claim by 3/15/2013 to add allegations as to Defendant Calace's personal involvement or to name an appropriate individual capacity defendant.  The Court has recognized the practical implications of its remand and reminds the parties of the alternatives available to them to address the inefficiencies which the Court has explained above.


IT IS SO ORDERED.


_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

**Dated at Hartford, Connecticut: February 25, 2013**